## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Darryle E. Robertson, Jr.

v.

Civil No. 22-cv-27-LM
Opinion No. 2022 DNH 114 P

Robert Hazlewood, Warden, Federal
Correctional Institution, Berlin

## O R D E R

Darryle E. Robertson, Jr., a prisoner at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the conditions of his confinement at FCI Berlin during the COVID-19 pandemic.  See doc. no. 1.  Before the court is the respondent FCI Berlin Warden Robert Hazelwood's motion for summary judgment (doc. no. 5).

### Standard

Summary judgment is appropriate in habeas proceedings . . . when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Fed. R. Civ. P. 81(a)(2); Rule 11 of the Rules Governing § 2254 Cases.

Bader v. Warden, No. 02-cv-508-JD, 2003 DNH 90, 2003 U.S. Dist. LEXIS 8955, at *8-9, 2003 WL 21228520, at *3 (D.N.H. May 28, 2003), aff'd, 488 F.3d 483 (1st Cir. 2007).  The court construes petitioner's pleadings liberally, considering his pro se status.  See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008).

## Background[1]

In 2003, Robertson pleaded guilty in the District of Maryland to violations of 21 U.S.C. § 846, and that court sentenced him to 360 months of imprisonment. See United States v. Robertson, No. 1:01-cr-00304-JFM (D. Md. Apr. 30, 2003) (ECF No. 406), aff'd, No. 07-4076, 2007 WL 4102749 (4th Cir. Nov. 19, 2007). He is presently incarcerated at FCI Berlin, a Federal Bureau of Prisons ("BOP") facility, where four distinct COVID-19 outbreaks have occurred since March 2020, see Dec. of Christine Larin (Feb. 16, 2022) ¶ 5 (Doc. 5-1, at 2) ("Larin Dec.").

Robertson alleges that the most recent outbreak of COVID-19 at FCI Berlin that occurred in early 2022 created conditions of imprisonment amounting to "extreme penalization" which caused him "mental exhaustion and fear of living in the midst of a deadly pandemic." Doc. No. 1 at 2. Robertson asserts that the facility's COVID-19 response has placed severe limits on his access to out-of-cell time and educational, recreational, and psychological services. See doc. no. 9 at 4. He claims that the Warden's failure to routinely test the staff members who regularly enter and exit the facility has allowed COVID-19 outbreaks to occur, resulting in the implementation of restrictive conditions of confinement that violate his rights under the Eighth Amendment. Robertson seeks release from prison custody or an order directing that the remainder of his sentence be served in home confinement. Id.

---

[1] The background facts are undisputed except where otherwise indicated.

FCI Berlin's restrictions during the COVID-19 pandemic have included inmate testing procedures, vaccination, and quarantine and isolation protocols, as prescribed by the BOP's Pandemic Response Plan, which the BOP established in conjunction with guidance from the Centers for Disease Control and Prevention ("CDC"), the World Health Organization ("WHO"), and the U.S. Department of Justice.  See Larin Dec. ¶ 6 (Doc. 5-1, at 2).  Employing such procedures, FCI Berlin has effectively managed each of the COVID-19 outbreaks that have occurred at the facility.  Id. ¶ 5.  There have been no inmate deaths and no hospitalizations due to the virus at FCI Berlin.  See id.  The facility has successfully contained and effectively eliminated the virus from the facility each time an outbreak has occurred.  See id.

The most recent outbreak of COVID-19 at FCI Berlin, which started in early January 2022, see id. ¶ 6, infected a total of 326 inmates and 50 staff members before the State declared it had ended on March 7, 2022.  See N.H. Dep't of Health and Human Services Weekly COVID-19 Update ("DHHS Update") - Week of Sept. 8, 2022, https://www.covid19.nh.gov/news/dhhs-updates (last visited Sept. 8, 2022).  Robertson was among those infected during that outbreak; he was quarantined in January 2022 and recovered without incident.  See Larin Dec. ¶ 12 (doc. no. 5-1, at 3).  The quarantine procedures implemented during that outbreak coincided with a nationwide BOP facility lockdown in late January/early February 2022, see id. ¶¶ 6-10.  That lockdown came to an end in early February 2022, and on February 10,

2022, the last three previously positive FCI Berlin inmates were released from quarantine to the general prison population.[2]  See id. ¶ 6.

## **Discussion**

The Eighth Amendment requires the government to provide "humane conditions of confinement."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  An Eighth Amendment conditions-of-confinement claim has both an objective and a subjective component.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is satisfied when the deprivation denies a prisoner "'the minimal civilized measure of life's necessities,'" id. (citation omitted), or exposes him or her to a substantial risk of serious harm, Farmer, 511 U.S. at 834.

To satisfy the subjective component of an Eighth Amendment conditions-of-confinement claim, a prisoner must present evidence of a prison official's culpable state of mind.  See Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014).  A showing of "deliberate indifference" to conditions posing a substantial risk of serious harm will

---

[2] The BOP presently classifies FCI Berlin's operational level as "Level 2" on a scale of 1 to 3, with higher "Level 3" protocols reserved for implementation during outbreaks or other times of heightened risk, based on the facility's vaccination rate, medical isolation rate, and/or the community transmission rate.  See BOP COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Sept. 8, 2022).  At Level 2, facilities implement "Moderate Modifications" for COVID-19 infection control, including the use of face coverings indoors, social distancing, staff self-monitoring/reporting of symptoms, and capacity caps on indoor recreation, education, psychological services and programs.  See BOP Modified Operational Levels, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 8, 2022).

satisfy the subjective prong.  See Farmer, 511 U.S. at 834.  To demonstrate deliberate indifference, the prisoner must show that prison officials were aware of facts that gave rise to an inference that a substantial risk of serious harm existed; that they drew the inference that such a risk existed; and that they did not take reasonable steps to ameliorate the risk.  See id. at 828-29.  The requisite mental state is similar to criminal recklessness, "'characterized by obduracy and wantonness, not inadvertence or error in good faith.'"  Mateo v. Warden, No. 20-cv-1012-PB, 2021 DNH 089, 2021 WL 2109748, at *3, 2021 U.S. Dist. LEXIS 98383, at *7 (D.N.H. May 24, 2021) (quoting Leite v. Bergeron, 911 F.3d 47, 52–53 (1st Cir. 2018)).  A showing of a prison official's inadvertence or negligence is insufficient to satisfy the subjective component of an Eighth Amendment claim.  See Kosilek, 774 F.3d at 83; Ruiz–Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).

    With respect to the objective component of the inquiry, this Court notes that Robertson received both doses of the Moderna vaccine plus a booster in 2021 while in BOP custody,[3] and it is undisputed that he does not have any underlying health conditions associated with a high risk of severe COVID-19, based on CDC guidance. See Larin Dec. ¶¶ 11-12.  Although he tested positive for COVID-19 during the most recent outbreak, he recovered without incident and was released from quarantine

---

[3] The FCI Berlin Health Services Department serves approximately 750 inmates.  See Larin Dec. ¶ 2.  As of September 8, 2022, a total of 714 inmates and 153 staff members at FCI Berlin had been fully vaccinated.  See BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last accessed Sept. 8, 2022).

on or before February 10, 2022, when the last three prisoners who had previously tested positive were released to the general prison population.[4]  See id. ¶¶ 6-11.

But even assuming, without deciding, that Robertson has presented evidence sufficient to raise a genuine issue of material fact as to whether he has been exposed to a substantial risk of serious harm, he has not presented evidence upon which any reasonable factfinder could find any FCI Berlin official's deliberate indifference to that risk of harm.  As the undisputed facts in the Larin Declaration indicate, officials at FCI Berlin have taken a comprehensive approach to dealing with the risks of COVID-19 infection in an institutional environment.   Neither the fact that four outbreaks have occurred in two years, nor the Warden's failure to require routine, surveillance testing of all staff members, provides an evidentiary basis for a factfinder to conclude that the facility's response has amounted to deliberate indifference, under the circumstances.  See Lawson v. Pritzer, No. 21-cv-4063-MMM, 2022 U.S. Dist. LEXIS 43962, at *7, 2022 WL 757932, at *2 (C.D. Ill. Mar. 11, 2022) (failure to implement routine staff testing, standing alone, did not manifest deliberate indifference given that facility's overall response to COVID-19

_____

[4] As of September 8, 2022, BOP reported zero positive cases of COVID-19 among inmates and eight "confirmed active" cases among FCI Berlin employees, see BOP COVID-19 Cases, Sept. 8, 2022, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 8, 2022).  The undisputed evidence here indicates that staff members testing positive have been required to quarantine at home until they received medical clearance to return to work.  See Larin Dec. ¶ 13.  Information published by the State of New Hampshire states that since the early 2022 outbreak ended on or before March 7, 2022, no further COVID-19 outbreaks have occurred at FCI Berlin, see DHHS Update – Week of Sept. 8, 2022, https://www.covid19.nh.gov/news/dhhs-updates (last visited Sept. 8, 2022).

was aimed at decreasing risk of outbreaks); Wilson v. Ponce, No. 2:20-cv-4451-MWF (MRWx), 2022 U.S. Dist. LEXIS 33963, at *17-18, 2022 WL 2155119, at *6 (C.D. Cal. Feb. 2, 2022) (petitioners' expert's preference for surveillance testing in lieu of targeted testing regimen implemented at BOP facility reflected a difference of medical opinion, not deliberate indifference), appeal filed, No. 22-55563 (9th Cir. Apr. 1, 2022); see also Mateo, 2021 WL 2109748, at *3 n.6, 2021 U.S. Dist. LEXIS 98383, at *8 n.6 (evidence of widespread April 2021 outbreak of COVID-19 at FCI Berlin, without more, did not establish that the BOP has been deliberately indifferent to risks posed by COVID-19 (citing Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); Wilson v. Williams, 961 F.3d 829, 842-43 (6th Cir. 2020) (rejecting contention that BOP "was deliberately indifferent to petitioners' health and safety because [its] actions have been ineffective at preventing the spread of COVID-19")).

To be sure, the pandemic response protocols at FCI Berlin have placed substantial burdens on inmates including Robertson -- especially during outbreaks when the facility has quarantined or temporarily isolated prisoners and restricted access to group activities, services, and programs, to control the spread of the virus. But there is no evidence suggesting that the burdens associated with those protocols have been implemented with wanton or reckless indifference, or with any subjective awareness of any substantial risk of serious harm to Robertson.  In the absence of

evidence that prison officials at FCI Berlin have been deliberately indifferent to a substantial risk of serious harm to Robertson, the Eighth Amendment claims in this matter are properly resolved as a matter of law, without a hearing.  The Court grants the respondent's motion for summary judgment (doc. no. 5) and denies Robertson's § 2241 petition.

## Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (doc. no. 5) is GRANTED, and the petitioner's § 2241 petition is DENIED.  The clerk is directed to enter judgment and close this case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 15, 2022

cc:      Darryle E. Robertson, Jr., pro se
         Seth Aframe, Esq.